## CIRCUIT COURT OF BALTIMORE CITY

Filed October 24, 1889.

### ELLEN AMEY
### VS.
### CHARLES T. COCKEY ET AL.

*S. S. Field* for plaintiff.

*Hinkley & Morris* and *F. W. Story* for defendants.

DENNIS, J.—

In a case like the present, where the plaintiff seeks to set aside a deed made more than forty years ago, under which parties have been in possession and improved the property, the law requires that every fact necessary to the establishment of the claim, shall be proven in the clearest possible manner.

Here the plaintiff's right to recover (conceding it, for the sake of argument, to be perfect in other respects) depends upon her age at the time of the execution of the deed which is sought to be set aside. If she was of legal age to execute such an instrument at the time of its date, April 20, 1848, she is concededly without standing in the present controversy; as it is sought to be avoided solely on the ground that she was under age at the date of its execution.

On her examination she was asked the date of her birth, and gave it as December 18, 1829; she also gave the date of her brother James' birth as April 28, 1827. When asked if she had any proof of the fact, she said she had, and produced a family Bible, in which

her own and brother's births, and the dates thereof, were set forth.

The entries are unmistakably, and concededly, of very recent date, at least sixty years later than the events they profess to record; they can, therefore, have no such weight as would attach to contemporaneous entries.

The plaintiff gave no other source of information as to her age. It is, I think, clear, from the letter of her aunt, written several years ago, which was introduced in evidence, that the plaintiff was ignorant, or at least uncertain, as to her age, and had written to her aunt to know what it was, for the latter's letter shows it was written in response to such request, but gives the date of birth as stated by the plaintiff. This letter of the aunt (who is now dead) is, I think, admissible as a family declaration, and entitled to the weight that a declaration from one of so close kinship deserves.

It will be noted, however, as appears from its context, that it was made after the plaintiff conceived the idea of this suit; and the letter also shows the aunt had been made acquainted, when she wrote the letter, with the fact that the suit was contemplated. This, while it does not destroy its value as a family declaration, certainly requires the Court to scrutinize that value closely.

Now, this letter of the aunt undertakes to give the exact date, both of the plaintiff's birth and her brother's, and this declaration of the aunt must be taken, I think, as the sole source of information in the case by which we can arrive at the plaintiff's age, as it was clearly the plaintiff's sole source of information as to her knowledge of it.

If there is nothing to destroy or weaken the effect of this declaration it might be sufficient to establish the necessary date of the plaintiff's birth; although, even in that event, it must be confessed, it would not be wholly satisfactory, as it is a mere declaration resting, so far as the evidence shows, solely upon memory, fifty years after the event, made after *lis mota*, and when the decedent was subjected to no cross-examination.

But let us look at the statements in the letter.

She writes that the plaintiff was born on the 18th day of December, 1829, and her brother, James, on the 28th day of April, 1827.

Now, it is shown, that on the 12th day of June, 1847, her brother James executed a release to Francis Shanabrook, his guardian, for all the estate which had come to him from his father; and in this release he recites that he was at that time of lawful age. If this statement was true, he was at that time at least nearly a year older than he would have been had he been born at the date given by his aunt. Shanabrook was not only his guardian, but his stepfather—having married his mother after the death of Casper Wise.

Now, it must be conceded that this declaration of the son, as to his own age, is entitled to as much weight as the declaration of the aunt; and I think there is a much stronger presumption in favor of its truth from the fact that his mother was at that time alive, and her husband, who was the guardian and likely to know from her the true age of *her* son and *his* ward; would not have been likely to take a release when there was no necessity for its immediate execution, so far as we can see, and when the guardian had managed the property for so many years, if it was an absolutely void act—as it, of course, was, if the ward was at the time under age.

If, then, the aunt's declaration as to the age of James Wise is shown to be a mistake, what value can attach to her statement in regard to the plaintiff's age? Both are stated with the same degree of absoluteness, and no facts are given in support of the one more than of the other.

I do not think such proof comes up to the high standard required by the law, when the effect is to set aside a deed executed forty years ago, upon purely technical grounds.

It may be further observed that, at the time of the execution of this deed, for the first time there was had a partition of the estate of the plaintiff's father, Casper Wise, which was carried out by deeds between the parties entitled. It had been ready for partition ever since the marriage of plain-

80

tiff's mother to Francis Shanabrook, which was in 1839, but had been delayed presumably on account of the infancy of the children until the date of the deed now attacked; upon which same date all the deeds of partition were executed; and I think there is a strong presumption of fact that, all parties having waited so long for a partition, would not have had one at that time, if, by reason of the nonage of either of the children, it would have been nugatory.

Another fact deserves to be noticed. If the date of the plaintiff's birth given by her aunt is correct, she was married when a little over the age of fourteen years! It is, of course, possible that it was so; but in the absence of clear and definite proof of the plaintiff's age, the improbability of such precocity may fairly be taken into consideration.

At the close of the hearing, after the Court had called the attention of counsel to what it regarded as a weak point in the plaintiff's case, plaintiff's counsel filed a petition asking to be allowed to supplement the evidence offered on this point by additional testimony. A Court of Equity, will, ordinarily, allow this to be done at any time before final decree, if the interests of justice require it, but the new testimony sought to be adduced must, in addition to other requirements, be of such character that it would, if allowed to be introduced, satisfy the Court as to the fact to which it is directed. The offer, made by the plaintiff's petition, does not measure up to this requirement. The testimony of the new witness—Sauerwein—sought to be introduced, would be, at the most, wholly inferential and inconclusive, based upon suppositions too vague to be of any value in determining rights in a controversy like the present.

The character of the record evidence. alluded to in the petition, is too indefinitely stated under the rule to be allowed; but even if the record was of the highest order, it would not directly or conclusively effect the question at issue.

For these reasons the petition will be overruled and the bill be dismissed.